Citation Nr: 1452678 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 10-44 297 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for left ear hearing loss, on direct and presumptive bases. 

2. Entitlement to service connection for left ear hearing loss, as secondary to a service-connected disability, to include right bundle branch block with hypertension. 

3. Entitlement to service connection for tinnitus. 

4. Entitlement to service connection for a lumbar spine disorder. 

5. Entitlement to service connection for a left knee disorder. 

6. Entitlement to service connection for sleep apnea. 



REPRESENTATION

Appellant represented by: Vietnam Veterans of America


ATTORNEY FOR THE BOARD

D. Chad Johnson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from January 1988 to November 1994. 

This appeal comes to the Board of Veterans' Appeals (Board) from a September 2009 decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas. 

The Board has previously remanded this matter in March 2013 and March 2014. As discussed below, there has been substantial compliance with the requested development as to the issues decided herein. See Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand by the Court or the Board confers the right to compliance with remand orders); see Dyment v. West, 13 Vet. App. 141 (1999) (holding that remand not required under Stegall where there was substantial compliance with remand directives). 

The Board notes that the evidence of record, specifically the May 2014 VA examiner's opinion, raises an alternate theory of entitlement regarding the Veteran's claim of entitlement to service connection for left ear hearing loss. Therefore, the Board has bifurcated these claims as listed on the title page. See Tyrues v. Shinseki, 23 Vet. App. 166, 176 (2009) (en banc) (holding that it is permissible for the Secretary to bifurcate a request for benefits on the basis of direct service connection from the request on the basis of presumptive service connection), aff'd 631 F.3d 1380 (Fed. Cir. 2011); see also Locklear v. Shinseki, 24 Vet. App. 311, 315 (2011) (bifurcation of a claim generally is within VA's discretion). The Board's herein decision will address direct and presumptive service connection theories of entitlement, while the remand below will address secondary service connection. 

The issues of entitlement to service connection for left ear hearing loss, as secondary to a service-connected disability, and a lumbar spine disorder are addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). 


FINDINGS OF FACT

1. Left ear hearing loss did not have onset during active service, was not caused by an event, disease, or injury during active service, and did not manifest to a compensable degree within one year of active service. 

2. Tinnitus did not have onset during active service and is not etiologically related to active service. 

3. A left knee disability did not have onset during active service, is not etiologically related to active service, and is not caused or aggravated by a service-connected disability. 

4. Sleep apnea did not have onset during active service, is not etiologically related to active service, and is not caused or aggravated by a service-connected disability. 


CONCLUSIONS OF LAW

1. The criteria for service connection for left ear hearing loss have not been met on a presumptive or direct basis. 38 U.S.C.A. §§ 1110, 1112, 1131, 1137, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.102, 3.303, 3.307, 3.309, 3.385 (2014). 

2. The criteria for service connection for tinnitus have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002); 38 C.F.R. §§ 3.1.02, 3.303 (2014). 

3. The criteria for service connection for a left knee disorder, to include as secondary to a service-connected disability, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.303, 3.310 (2014). 

4. The criteria for service connection for sleep apnea, to include as secondary to a service-connected disability, have not been met. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.303, 3.310 (2014). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process

VA has duties to notify and assist claimants in substantiating claims for VA benefits. See 38 U.S.C.A. § 5103, 5103A (West 2002 & Supp. 2013); 38 C.F.R. § 3.159 (2013). The RO provided the required notice regarding the Veteran's service connection claims in a letter sent to the Veteran in February 2009. 

Regarding the duty to assist, the RO has obtained the Veteran's service treatment records and VA treatment records, and associated all such records with the claims file. To the extent that the March 2013 and March 2014 Board remands directed the RO to inquire with the Veteran regarding any relevant private treatment records, the Board notes that notice letters requesting any private treatment records were sent to the Veteran in April 2013 and April 2014; however, no private treatment records have been provided by the Veteran, nor has he provided authorization for VA to seek any private treatment records on his behalf. Moreover, in a May 2009 statement, the Veteran reported that all relevant treatment was provided by VA medical centers. 

VA provided relevant examinations and/or opinions in August 2009, August 2010, May 2013, and May 2014. The Board acknowledges that prior examinations have been found inadequate and resulted in prior Board remands as noted. Moreover, the Veteran and his representative, most recently within the October 2014 Informal Hearing Presentation, assert that the May 2014 VA examinations concerning his lumbar spine and sleep apnea are inadequate and necessitate an additional remand. However, the Board finds that the examinations and opinions, when read together and considered as a whole, are adequate to decide the claims discussed herein. The VA opinions rendered, discussed further below, are based on thorough examinations, appropriate diagnostic tests, and reviews of the Veteran's medical history. See Barr v. Nicholson, 21 Vet. App. 303, 312 (2007); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the appellant's prior medical history and examinations and also describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one). 

The Board has thoroughly reviewed all the evidence in the appellant's claims folder. Although the Board has an obligation to provide reasons and bases supporting this decision, there is no need to discuss, in detail, each piece of evidence of record. See Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the entire record, but does not have to discuss each piece of evidence). The analysis below focuses on the most salient and relevant evidence and on what this evidence shows, or fails to show, regarding the Veteran's claims on appeal. The Veteran must not assume that the Board has overlooked pieces of evidence that are not explicitly discussed herein. See Timberlake v. Gober, 14 Vet. App. 122 (2000) (the law requires only that the Board address its reasons for rejecting evidence favorable to the appellant). 

As all necessary development has been accomplished, no further notice or assistance is required for a fair adjudication of the Veteran's claims and, therefore, appellate review may proceed without prejudice to the Veteran. 



II. Service Connection - Generally 

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2002 & Supp. 2013); 38 C.F.R. § 3.303(a) (2014). "To establish a right to compensation for a present disability, a Veteran must show: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service"-the so-called "nexus" requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004)). 

For certain chronic disorders, including arthritis and hearing loss, service connection may be granted on a presumptive basis if the disease is manifested to a compensable degree within one year following service discharge. 38 U.S.C.A. §§ 1101, 1112 (West 2002); 38 C.F.R. §§ 3.307(a)(3), 3.309(a) (2013). Additionally, for chronic diseases defined by 38 C.F.R. § 3.309(a) and shown in service or by a continuity of symptoms after service, the disease shall be presumed to have been incurred in service. 38 C.F.R. § 3.303(b); Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013). In order to show a chronic disease in service, the record must reflect a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. Where a chronic disease has been incurred in service, subsequent manifestations of the same chronic disease at any later date, however remote, are service-connected unless clearly attributable to intercurrent causes. If a condition noted during service is not shown to be chronic, then generally, a showing of continuity of symptoms after service is required in order to establish entitlement to service connection. Id. 

Even where service connection cannot be presumed, service connection may still be established on a direct basis. See Stefl, 21 Vet. App. 120; Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994). 

Service connection may also be granted on a secondary basis for a disability which is "proximately due to or the result of a service-connected disease or injury". 38 C.F.R. § 3.310(a) (2013). Where a service-connected disability aggravates a nonservice-connected condition, a Veteran may be compensated for the degree of disability (but only that degree) over and above the degree of disability existing prior to the aggravation. Allen v. Brown, 7 Vet. App. 439 (1995) (en banc); 38 C.F.R. § 3.310(b). 


II.A. Service Connection - Left Ear Hearing Loss & Tinnitus

The Veteran claims service connection for left ear hearing loss and tinnitus due to his active service. 

A hearing loss disability is defined for VA compensation purposes with regard to audiologic testing involving puretone frequency thresholds and speech discrimination criteria. 38 C.F.R. § 3.385 (2014). For purposes of applying the laws administered by VA, impaired hearing will be considered to be a disability when the auditory threshold in any of the frequencies of 500, 1000, 2000, 3000, or 4000 Hertz (Hz) is 40 decibels (dB) or greater; or when the auditory thresholds for at least three of the frequencies of 500, 1000, 2000, 3000, or 4000 Hz are 26 dB or greater; or when speech recognition scores using the Maryland CNC test are less than 94 percent. Id. Moreover, the threshold for normal hearing is from 0 to 20 decibels, and higher threshold levels indicate some degree of hearing loss. See Hensley v. Brown, 5 Vet. App. 155, 157 (1993). 

Service treatment records contain the results of audiograms conducted in August 1987, January 1988 at enlistment, December 1992, and at separation from service in November 1994. None of the recorded in-service audiograms indicates any clinical hearing loss, according to VA regulations, within the relevant auditory thresholds during service, see 38 C.F.R. § 3.385; however, there is some documented decrease of up to 10 decibels within the relevant auditory thresholds during service. In reports of medical history concurrent to his in-service examinations, the Veteran denied any hearing loss or ear, nose, and throat (ENT) problems, and did not report tinnitus. 

Although the evidence of record fails to indicate any clinical hearing loss within the relevant auditory thresholds during service, the Board notes that the absence of in-service evidence of hearing loss is not fatal to a claim for service connection. See Ledford v. Derwinski, 3 Vet. App. 87, 89 (1992). Competent evidence of a current hearing loss disability and a medically sound basis for attributing such disability to service may serve as a basis for a grant of service connection for hearing loss. See Hensley, 5 Vet. App. at 159. 

Post-service VA treatment records document a current left ear hearing loss disability. The Veteran first was scheduled for a VA examination of his ears in August 2009; however, he failed to appear at the examination. Subsequent examinations conducted in August 2010, May 2013, and May 2014 all demonstrate a qualifying, current left ear hearing loss disability for VA purposes. See 38 C F R § 3 385. 

The August 2010 VA examiner diagnosed left ear hearing loss which was not related to service, but the examiner did not provide a rationale and did not address the objective decibel loss in the Veteran's left ear during service. 

The May 2013 VA examiner also concluded that the Veteran's left ear hearing loss was not likely related to service because there was "no significant change between the enlistment and exit physicals." It was further noted that the loss seen in the August 2010 VA examination was not "present during military service (normal hearing throughout the military record with no significant threshold change) and therefore there was no 'initial manifestation' of the current loss at the left ear" during service. However, the examiner failed to discuss the Veteran's in-service noise exposure, as requested by the Board. Moreover, concerning the objective decrease in hearing acuity noted in the service treatment records, the examiner noted that this was not a "significant change" but did not explain why it should not be considered significant. Finally, the examiner did not opine whether this objective loss was an initial manifestation, recorded during active service, of the Veteran's current hearing loss. 

Most recently, the Veteran was afforded a VA examination concerning his left ear hearing loss in May 2014. The examiner noted review of the claims file, including service treatment records and prior VA treatment records. The Veteran reported hearing loss since active service, when he worked as a firefighter and in damage control for seven years, which service included noise exposure. He denied significant occupational noise exposure prior to active service but reported recreational noise exposure, with hearing protection, throughout his life from hunting, chain saws, power tools, and lawn equipment. He was unsure about the specific date and circumstances of the onset of tinnitus, but reported occasional bilateral tinnitus of mild loudness beginning around 2007. 

The examiner opined that the Veteran's diagnosed left ear hearing loss was not at least as likely as not caused by or a result of his active service, to include in-service noise exposure. Specifically, the examiner noted that service treatment records demonstrated normal hearing in the left ear without any significant changes in hearing thresholds greater than normal measurement variability during active service. The examiner cited to medical literature which stated that a change in thresholds at any given frequency of 10 decibels or less is within test-retest reliability, and that a significant threshold shift is defined as a worsening between the first and second audiometric test of 15 decibels or more at a minimum of at least one tested frequency. He emphasized that in the Veteran's case, there was not more than a 10-decibel shift at any frequency between service enlistment and discharge. Various factors which could cause small decreases in hearing acuity were identified as a cold/sinus condition, non-occluding earwax, headphone placement, calibration issues, inattention by the service member, and test room acoustics. The Veteran reported in-service noise exposure as a damage control specialist and firefighter, with hearing protection, but there is no record, complaint, or treatment of hearing loss or tinnitus within service treatment records. The examiner also referred to a 2005 study by the Institute of Medicine (IOM) which found that a prolonged delay in the onset of noise-induced hearing loss was "unlikely." Finally, the examiner stated that the Veteran's hearing changes in service, which were no more than 10 decibels and therefore insignificant, did not represent an initial manifestation of the Veteran's current hearing loss, such that his hearing loss can said to have been incurred in or began during active service and progressively worsened until being diagnosed as a hearing disability under VA regulations. Rather, he stated that any change in hearing from discharge to the present was more likely due to civilian and recreational noise exposure, medical conditions (hypertension, heart problems, stroke) in the fifteen years following active service. He concluded that, in the absence of a significant decrease in hearing sensitivity, there is no medically sound basis to attribute the Veteran's current hearing loss to his period of active service. 

The May 2014 examiner also found that the Veteran's tinnitus was a symptom associated with his diagnosed left ear hearing loss, but that is was less likely than not caused by or a result of military noise exposure, as there was no significant hearing threshold shift documented during active service beyond normal variation and the service treatment records were negative for reports of tinnitus, which was first reported in the August 2010 VA examination as occurring a year and a half prior to that time. 

As noted above, there is no evidence that the Veteran's current left ear hearing loss manifested to a compensable degree within one year following separation from service. There is no competent evidence of a hearing loss disability for VA purposes prior to the August 2010 VA examination, as this can only be shown on audiological testing. Although the Veteran's statements are competent evidence to report that he has experienced hearing loss and tinnitus, see Layno v. Brown, 6 Vet. App. 465, 470 (1994), his statements are not competent evidence to establish a hearing loss disability for VA purposes, to include whether it was manifested to a compensable degree within the year subsequent to service discharge. In certain unique instances, lay testimony may be competent to establish medical diagnosis or etiology. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007); see also Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009). However, the diagnosis of a hearing disability for VA purposes is based on objective audiometric testing and is not simply determined based on mere personal observation by a layperson. 38 C.F.R. § 3.385. The question of whether the Veteran had a hearing disability for VA purposes within one year of service discharge does not lie within the range of common experience or common knowledge, but requires special experience or special knowledge in the field of audiology, specifically including audiometric testing. 

Furthermore, the only adequate and the most probative medical opinion of record as to whether the Veteran's current left ear hearing loss disability and tinnitus are related to his active service weighs against his claim. Multiple VA examinations have resulted in the finding that the Veteran's left ear hearing loss was not at least as likely as not caused by or a result of his military service. Moreover, the most recent VA examination in May 2014 was well supported by reasoning, based on review of the relevant medical history, and a complete audiometric examination. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Additionally, VA examiners have consistently found that the Veteran's reported tinnitus is related to his hearing loss, but not to his active service. Again, the Veteran is competent to report hearing loss and tinnitus, see Layno, 6 Vet. App. at 470; however, the evidence provided by an audiologist is more probative on this matter, since that person has training, education, experience, and expertise that the Veteran is not shown to have. Moreover, the more probative evidence of record has related his tinnitus to his left ear hearing loss, which the Board has found herein to be unrelated to his active service. 

Accordingly, on this record, the evidence weighs against the Veteran's claims that his left ear hearing loss and tinnitus were incurred in, or a result of active service. As the preponderance of the evidence is against the claim, there is no reasonable doubt to be resolved. 38 U.S.C.A. § 5107(b) (West 2002); 38 C.F.R. § 3.102 (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Accordingly, the claims of service connection for a left ear hearing loss disability and tinnitus are denied. 


II.B. Service Connection - Left Knee Disorder

The Veteran also claims entitlement to service connection for a left knee disorder, claimed as secondary to his service-connected right knee disability. 

Service treatment records document that the Veteran was treated for a contusion of the left knee in 1989 which resolved with no diagnosed disease or residual condition. 

Post-service VA treatment records first document complaints of left knee pain in March, 2009, when the Veteran reported pain beginning 3 to 4 months previously. X rays taken at that time showed mild degenerative changes about the patellofemoral joint of the left knee. 

The Veteran was first afforded a VA examination concerning his left knee claim in August 2009. The examiner diagnosed degenerative joint disease (DJD) of the left knee and opined that the Veteran's left knee DJD was less likely as not caused by his service-connected right knee disability. The examiner noted that there was no evidence of complaints of left knee pain until March 2009 when the Veteran complained of left knee pain of three to four months in duration and added that he had been doing construction work at home. Moreover, the examiner noted there had been no x-rays of the right knee, which suggested that the problem with the right knee was stable and not that severe, and therefore could not negatively affect the Veteran's left knee. 

Given that the claim involved a theory of secondary service connection, the Board subsequently remanded the matter in March 2013 to obtain an additional medical opinion that specifically addressed whether the Veteran's diagnosed left knee DJD was aggravated by his service-connected right knee disability. 

The resulting May 2013 VA examiner's opinion stated that the Veteran's right knee was not aggravating his left knee disorders, and specifically stated that "it is unlikely that the Veteran's mild right knee condition would cause aggravation of the Veteran's mild DJD of the left knee." (emphasis added). However, no rationale was provided to support the opinion. Accordingly, the Board found the opinion to be inadequate, and again remanded the matter in March 2014. 

Most recently, the Veteran was afforded a VA examination regarding his claimed left knee disability in May 2014. The examiner reviewed the entire claims file, conducted a thorough medical examination, and opined that the Veteran's left knee DJD was less likely than not incurred in or caused by his active service. The examiner noted that the Veteran was treated for a soft tissue injury in 1989 and was not diagnosed with left knee DJD until over 20 years later. Moreover, his left knee DJD was due to the aging process rather than the noted soft tissue injury, which could not be transformed into DJD except by the aging process. 

Additionally, the examiner specifically noted that there was "no nexus" between the Veteran's left knee DJD and his service-connected right knee disability, and that the Veteran's gait was normal and unaltered due to any weight bearing effect of his service-connected right knee disability. 

The Board finds that the language employed by the May 2014 VA examiner is sufficiently broad in this instance to encompass both causation and aggravation considerations under a secondary service connection theory. Specifically, the examiner found that there is "no nexus" between the Veteran's service-connected right knee disability and his left knee DJD other than the aging process. He noted the Veteran's normal gait, which was unaltered by any weight-bearing effect of his service-connected right knee disability. 

Moreover, laypersons, like the Veteran, are competent to report observable symptoms, including altered weight bearing caused by his service-connected right knee. See Layno, supra. However, the opinion provided by a medical professional is more probative than that of the Veteran. That individual has training, education, and expertise that the Veteran is not shows to have. The May 2014 VA examiner's opinion is supported by adequate reasoning which is based upon a review of the claims file, the Veteran's medical history, and a physical examination of the Veteran. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Thus, May 2014 VA examiner's opinion is both adequate and the most probative evidence of record. 

The evidence discussed above weighs against the Veteran's claim that his left knee DJD is caused or aggravated by his service-connected right knee disability. As the preponderance of the evidence is against the claim, there is no reasonable doubt to be resolved, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. 49. 


II.C. Service Connection - Sleep Apnea

The Veteran has also claimed entitlement to sleep apnea as secondary to a service-connected disability, to include right bundle branch block with hypertension. 

Service treatment records do not document any complaints, treatment, or diagnosis of sleep apnea. 

VA treatment records document a diagnosis of obstructive sleep apnea in July 2008, following a sleep study conducted in April 2008. The Veteran was subsequently provided with a continuous positive airway pressure (C-PAP) machine to treat his condition. 

The Veteran was first afforded a VA examination concerning his sleep apnea claim in August 2009. The VA examiner diagnosed sleep apnea and opined that it was not related to the Veteran's service-connected right bundle branch block with hypertension or reactive airways disease. The examiner noted that the Veteran was diagnosed with obesity, and stated that sleep apnea is associated with obesity. He also reported that while sleep apnea may aggravate hypertension, it is not shown to be caused by hypertension. Finally, the examiner indicated that the Veteran's reactive airway disease is mild and does not require inhaler medication; therefore, it would not cause sleep apnea. 

In its March 2013 remand, the Board noted that the August 2009 VA opinion did not address the potential for aggravation of his sleep apnea by a service-connected disability. Consequently, the matter was remanded for an addendum medical opinion. 

An additional VA examination was provided in May 2013. The Veteran reported a history of snoring, daytime drowsiness, and being constantly tired. He stated he was diagnosed with sleep apnea after a sleep study in 2008, after which he was provided with a C-PAP machine, but that he had not used it for the last two years after his doctor advised him to stop using it because he was removing it during use. The examiner diagnosed sleep apnea that was less likely than not proximately due to or the result of the Veteran's service-connected condition. He stated that sleep apnea is a mechanical condition related obstruction of the upper airway and there is no connection between hypertension, heart disease, or respiratory disease and the development of sleep apnea. He noted that it is known that sleep apnea can lead to worsening of heart disease and hypertension, but that heart disease or hypertension does not cause sleep apnea. Rather, the examiner reported that it was more likely than not that the Veteran's obesity was the primary cause of his sleep apnea. 

In its March 2014 remand, the Board noted that the Veteran's sleep apnea had been related to his obesity in prior VA examinations and his representative had submitted statements asserting that the Veteran's obesity had been caused by his service-connected disabilities, particularly his right bundle branch block. Therefore, the Board remanded the matter for an additional VA medical opinion to address that specific contention. 

The Veteran was most recently afforded a VA examination regarding his sleep apnea claim in June 2014. The examiner reviewed his claims file and medical history, and conducted an in-person examination, after which he diagnosed the Veteran with sleep apnea. Regarding a direct service connection theory, the examiner opined that the Veteran's sleep apnea was less likely than not incurred in or caused by his active service based upon the lack of related complaints, treatment, or diagnosis within service treatment records. Additionally, regarding the Veteran's secondary service connection theory, the examiner stated that it was less likely than not that the Veteran's sleep apnea was related to upper airway disease and that there was no nexus between hypertension, heart disease, or respiratory disease and the development of sleep apnea. Further, he stated that respiratory disease, hypertension, and heart conditions do not aggravate sleep apnea, although sleep apnea may aggravate heart disease and hypertension. Significantly, he stated that a possible cause of the Veteran's sleep apnea was "primary exogenous obesity."

The Veteran is competent to relate his observable symptoms within the realm of his own personal knowledge, but he is not competent to establish that a certain symptom, such as a history of snoring, daytime drowsiness, or constantly fatigue, is attributable to a specific medical diagnosis, or to provide an etiological opinion linking sleep apnea to active service or a specific service-connected disability, as this requires specialized knowledge or training, such as medical expertise. See Layno v. Brown, 6 Vet. App. 465 (1994); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). 

After consideration of the evidence discussed above, the Board finds that service connection for sleep apnea is not warranted. In sum, there is no competent evidence of record that links his diagnosed sleep apnea to his active service or to a service connected disability. The Veteran's assertions of a relationship are not competent lay evidence of a nexus between complex medical conditions like sleep apnea and his service-connected right bundle branch block. See Jandreau, supra. Moreover, the Veteran has not submitted any additional competent evidence, such as a medical opinion, to indicate a link between his sleep apnea and any service-connected disability. Rather, his sleep apnea has consistently been attributed to his diagnosed obesity. To the extent that the Veteran and his representative have asserted that the Veteran's obesity is caused by his service-connected disabilities, including his right bundle branch block, the Board finds it highly probative that the June 2014 VA examiner reported that a possible cause of the Veteran's sleep apnea was "primary exogenous obesity." Exogenous obesity is "obesity due to overeating." Dorland's Illustrated Medical Dictionary 1309 (32d ed. 2012). Therefore, to the extent the Veteran attributes his obesity to his service-connected conditions, and his sleep apnea to his obesity, the Board finds that the competent medical evidence of record is evidence against such a connection. Rather than relating his obesity to a service-connected condition, the June 2014 VA examiner clearly stated that a possible cause of his sleep apnea was exogenous obesity, or obesity due to overeating. Thus, the Veteran's statements in this regard are afforded little probative value. 

Based upon the evidence discussed above, the Board finds that service connection is not warranted for the Veteran's sleep apnea, as due to active service or a service-connected disability. As the preponderance of the evidence is against the Veteran's claim, there is no reasonable doubt to be resolved, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, supra. 


ORDER

Service connection for left ear hearing loss, on direct and presumptive bases, is denied. 

Service connection for tinnitus is denied. 

Service connection for a left knee disorder is denied. 

Service connection for sleep apnea is denied. 


REMAND

Although the Board sincerely regrets the additional delay, the Veteran's claims of entitlement to service connection for left ear hearing loss, as secondary to a service-connected disability, and service connection for a lumbar spine disorder must be remanded for additional development. Specifically, an addendum medical opinion must be obtained regarding the Veteran's claim of service connection for left ear hearing loss, as secondary to a service-connected disability. Additionally, the Veteran's claim of entitlement to service connection for a lumbar spine disorder must again be remanded due to noncompliance with remand directives articulated by the Board in March 2014. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance). 



I. Left Earing Hearing Loss - Secondary Service Connection

There is some evidence of record that suggests a possible relationship between the Veterans' left ear hearing loss disability and another service-connected disability. Specifically, as discussed above, the May 2014 VA examiner opined that any change in the Veteran's hearing from discharge to the present was more likely due to, inter alia, medical conditions (hypertension, heart problems, stroke) in the fifteen years following active service. The Board points out that the Veteran is service-connected for right bundle branch block with hypertension; therefore, it appears that the VA examiner at least suggested that the Veteran's left ear hearing loss is at least partly due to a service-connected disability. 

Therefore, the Board finds that an addendum medical opinion would be helpful in deciding the claim on a secondary service connection theory of entitlement. Pursuant to its duty to assist, VA will provide a medical examination or obtain a medical opinion based upon a review of the evidence of record. 38 C.F.R. § 3.159(c)(4)(i). Accordingly, remand for a supplemental medical opinion regarding service connection for the Veteran's left ear hearing loss disability on a secondary basis is required. 


II. Lumbar Spine Disorder

As noted above, the Board previously remanded this matter in March 2014, specifically to obtain an adequate addendum opinion to determine the nature and etiology of any lumbar spine disorder, on both a direct and secondary basis. 

The May 2014 VA examiner provided opinions regarding the Veteran's diagnosed lumbar degenerative joint disease (DJD) on both a direct and a secondary basis. However, no opinion was provided regarding the Veteran's separately diagnosed lumbar strain condition. 

In light of the above, the Board finds that an additional remand is necessary. See Stegall, 11 Vet. App. at 271. VA's duty to assist includes obtaining a medical opinion when such an examination or opinion is necessary to make a decision on the claim. 38 U.S.C.A. § 5103A(d) (West 2002). 

Finally, any ongoing private and VA treatment records should also be obtained upon remand. See 38 USCA § 5103A(b), (c), 38 C F R § 3 159(b), see also Bell v Derwinski, 2 Vet App 611 (1992) (VA medical records are in constructive possession of the agency, and must be obtained if the material could be determinative of the claim). 

Accordingly, the case is REMANDED for the following action:

1. Obtain any relevant VA treatment records since February 2014 and associate those documents with the claims file. 

2. Return the claims file to the May 2014 VA audiologist for an addendum opinion regarding the Veteran's left ear hearing loss disability on a secondary basis. The claims file should be made available to and be reviewed by the examiner. Any indicated tests and studies should be accomplished, and all clinical findings should be reported in detail and correlated to a specific diagnosis. A clear rationale for all opinions expressed should be provided. 

The examiner is asked to provide an opinion on the following questions:

a) Is it at least as likely as not (a 50 percent probability or greater) that the Veteran's left ear hearing loss disability is caused by a service-connected disability, to include right bundle branch block with hypertension?

b) Is it at least as likely as not (a 50 percent probability or greater) that the Veteran's left ear hearing loss disability is aggravated (permanently worsened in severity beyond its normal progression) by a service-connected disability, to include right bundle branch block with hypertension?

3. Schedule the Veteran for a VA examination in order to determine the nature and etiology of any diagnosed lumbar disorder. The entire claims folder, including a copy of this remand, must be made available to and be reviewed by the examiner in conjunction with the examination. All tests deemed necessary should be conducted. After review of the claims file and a physical examination of the Veteran, the examiner should state all lumbar spine disorders found. 

a) The examiner should provide an opinion as to whether any lumbar spine disorder found, including both lumbar spine strain and lumbar DJD is at least as likely as not (a 50 percent or greater probability) related to the Veteran's active service. The examiner must specifically discuss and reconcile the lack of any in-service complaints, treatment, or diagnosis of a lumbar spine condition, the normal findings of the Veteran's lumbar spine in the November 1994 separation examination, any lay evidence regarding injury during service or symptoms during and subsequent to service, and the previous findings contained within the August 2009, May 2013, and May 2014 VA examinations. 

b) The examiner must also indicate whether any lumbar spine disorder is at least as likely as not caused by his service-connected right knee disability, to include any altered gait or weight bearing as a result of that disability. The examiner should specifically discuss the Veteran's lay evidence concerning that theory of causation. 

c) Finally, the examiner should opine whether the Veteran's lumbar spine disorder is at least as likely as not aggravated (made permanently worse beyond the normal progression of that disease) by his service-connected right knee disability. 

All opinions should be accompanied by an adequate rationale. If the examiner cannot resolve any question above without resorting to speculation, a detailed medical explanation as to why this is so should also be provided. 

4. Then, readjudicate the Veteran's claims on appeal. 

The appellant has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West Supp. 2014).



______________________________________________
R. FEINBERG
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs